**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Temporary Services, Incorporated, and Charleston Steel & Metal Company, on behalf of themselves, and all others similarly situated, </br></br>     Plaintiffs,</br></br> v.</br></br>American International Group, Inc., American Home Assurance Company, Commerce and Industry Insurance Company,</br></br>     Defendants. | C/A No.: 3:08-271-JFA</br></br></br></br></br></br></br></br>**ORDER** |

  Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiffs move the court to compel Defendants to answer interrogatories numbered 1–6 and 21 contained in their second set of interrogatories and to produce the information and/or documents asked for in requests to produce numbered 1, 3, 4, 8–24 contained in their second set of requests for production. Plaintiffs' case attempts to show that Defendants' underrepresented their workers' compensation premiums in order to fraudulently obtain higher loss cost multipliers than they were otherwise entitled to under South Carolina law and the applicable insurance regulations. At a hearing held before the court, Plaintiffs informed the court that their motion to compel with respect to interrogatory number 1 and request to produce number 24 is now moot, as Defendants have since responded to those requests. Plaintiffs also withdrew their motion with respect to interrogatory number 21 and requests to produce numbers 4, 8, and 9. Therefore, after only addressing the

1

remaining unresolved interrogatories and requests to produce, the court grants Plaintiffs' motion in part and denies it in part.

## ANALYSIS

### I. Interrogatories 2–6

In their interrogatories numbered 2–6, Plaintiffs asked Defendants to provide them with the "accurate standard written premium," and "accurate standard earned premium," both with and without adjustments for premium discounts, for the time period between 1997 and 2006, as well as the "accurate direct earned premium" for the same time period. Plaintiffs have since withdrawn its requests with respect to any data associated with the year 1997, as its own witness Michael Camilleri, an insurance consultant, conceded that data from 1998, 1999, and 2000—and not 1997—were used in calculating Defendants' loss cost multipliers in 2001. Plaintiffs assert that this data is relevant to formulating the Defendants' loss cost multipliers in accordance with the South Carolina Department of Insurance Form 2007 that Defendants filed with the South Carolina Department of Insurance in 2001. Moreover, Plaintiffs assert, and Defendants did not dispute, that Defendants continued to represent its 2001 Form 2007 as accurate for purposes of calculating their loss cost multipliers through 2006.

Defendants objected to these interrogatories in their written response, stating several bases for their objection. Defendants believed the interrogatories were vague because the term "accurate" is vague and because Plaintiffs failed to specify whether they sought national or state-specific information and whether they sought calendar-year data or policy-year data. With respect to Defendants' assertion that the use of the term "accurate" renders these interrogatories vague, the court instructs Defendants to treat the interrogatories as if the term was not included in the request. To the extent the information derived from these interrogatories is used against

Defendants at a later stage of litigation, the court will be sure to treat the interrogatories as revised to exclude the term "accurate".

With respect to Defendants' request for clarification regarding the specific type of information requested in these interrogatories, the court orders Defendants to turn over any national data, as well as any state-specific data, Defendants used to derive the premiums it reported to the South Carolina Department of Insurance in 2001. Plaintiffs' witness, Mr. Camilleri, testified that there may not be enough volume of data in one state for Plaintiffs to perform the necessary calculations to prove their case; therefore, the court finds that any national data utilized by Defendants to calculate their premiums and loss cost multipliers in South Carolina need to be made available to Plaintiffs. Defendants informed the court that they have already provided Plaintiffs with their Insurance Expense Exhibits and their Domestic Broker Group Data, but Plaintiffs insist that this information is insufficient. Because the information provided by Defendants does not reconcile with each other, Plaintiffs assert that they cannot rely solely on the Insurance Expense Exhibits to calculate what they believe will be accurate premium figures. Therefore, they ask to review any data Defendants submitted to the National Council on Compensation Insurance ("NCCI"), as well as other national data used by Defendants in determining their premiums submitted to other states.

In response to this concern, Defendants agreed to provide Plaintiffs with Call #1s from 1998, 1999, and 2000, which were requested by NCCI and relate to information included on Defendants' Statutory Page 14s. Although Defendants expressed concern over the fact that the data contained in the Call #1s will not reconcile to the Statutory Page 14s because the call data allows for, and even requires, some data to be excluded, including data for assigned risk and longshoreman, the court believes this information should be made available to Plaintiffs.

3

Defendants will have the opportunity to explain any discrepancies between any of the data and calculations at the summary judgment stage of this litigation, but for the time being, the court finds this information to be relevant to the allegations pleaded in this suit. Moreover, the court orders Defendants to also provide Plaintiffs with the Call #1s submitted to NCCI for the years 2001–2006, as Plaintiffs claim that Defendants have continued to rely on the Form 2007s they filed in 2001 to calculate their loss cost multipliers for each year through at least 2006. Therefore, it is ordered that Defendants must turn over to Plaintiffs any Call #1s submitted to NCCI during the time period between 1998 and 2006, as well as any other national data that Defendants used in determining the premiums they reported to South Carolina in relation to their 2001 filing of Form 2007 to the South Carolina Department of Insurance.[1]

## II.     Request to Produce #1

In their request to produce number 1 in their second set of requests to produce, Plaintiffs asked Defendants to produce each Statutory Page 14 filed by each constituent member of the American International Companies from January 1, 1997 to July 1, 2007. Even though Defendants contend that these entities are not a part of the case, therefore challenging the relevancy of the request, the court believes Plaintiff is entitled to review these documents in developing its case. As already noted, Plaintiffs' witness, Mr. Camilleri, testified that the information already received from Defendants is inconsistent, and these documents may assist

---

[1] The court rules the same with respect to any dispute between the parties associated with Plaintiffs' Request to Produce #3, which asks Defendants to produce any and all documentation submitted to NCCI that indicated the annual earned, written, or standard premiums for Defendants—but only for the years 1998 to 2006. The court also finds that Defendants should provide Plaintiffs with any information they submitted to NCCI in relation to its Data Remediation Plan with NCCI, as requested in Request to Produce #11. Although Defendants contend that this information primarily deals with Defendants' untimely reporting of information and that the remediation data was not used to calculate Defendants' loss cost multipliers in South Carolina, it appears to the court that the information provided to NCCI is relevant to the time period at issue in this case and appears to also deal with the accurate reporting of standard premiums. If this information did not affect the premium data Defendants provided the State of South Carolina, as alleged by Defendants, such a showing can be made at the summary judgment stage of this litigation.

Plaintiffs in recalculating the premiums and other financial data reported by Defendants to determine whether or not a misrepresentation affected Defendants loss cost multipliers. Accordingly, the court orders Defendants to respond to Plaintiffs' request for production number 1, but only with respect to the years 1998–2006.

### III.     Request to Produce #10

In their request to produce number 10 in their second set of requests to produce, Plaintiffs asked Defendants to produce complete copies of all documentation provided to the Insurance Commissioner for the State of Oklahoma in response to financial data calls issued to AIG from the State of Oklahoma, pertaining to the years 1998 through 2003. Defendants object to having to provide Plaintiffs with this information because they believe it is unrelated to the data used to calculate their loss cost multipliers in South Carolina. To support their position, Defendants provided the court with the affidavit of Ellen Sonkin, a Vice President in the Regulatory Reporting Division of Chartis U.S., Inc., a subsidiary of American International Group, Inc., whose duties include overseeing the reporting of all workers' compensation data to NCCI for the Chartis insurers licensed to write workers' compensation insurance. She essentially attests that the matters in Oklahoma did not impact the calculation of Defendants' loss cost multipliers in South Carolina. Plaintiffs counter this argument by asserting that the data showing discrepancies pertaining to premiums reported between 1998 and 2003 in Oklahoma is relevant to this case because the data relied upon by Defendants in formulating their loss cost multipliers in South Carolina stems from the same time period.

After considering the parties' positions on this issue, the court does not find that Defendants should have to provide Plaintiffs with any documents specifically pertaining to any matters relating to the State of Oklahoma. To be sure, if any information or data used in the State

5

of Oklahoma was also used in a way to affect the premiums reported to the State of South Carolina or in a way to affect Defendants' loss cost multipliers, then that that information is absolutely relevant to this case and should be made available to Plaintiffs. But Defendants do not have to provide Plaintiffs with all of the documentation associated with AIG's dealings with the State of Oklahoma merely because it was a similar situation. This case involves Defendants' alleged breach of contract with companies located in South Carolina because of their misrepresentations to the South Carolina Department of Insurance, and the court believes it is best to limit discovery to that issue. Moreover, Plaintiffs' witness, Mr. Camilleri, testified that he was aware that the Oklahoma matter does not involve matters that were reported to the State of South Carolina. He merely stated that information from other states, such as Oregon, New York, and Oklahoma, would expedite the case and could more accurately result in a valid determination of what the effect was of any errors made by AIG in those states from a pattern standpoint and internal protocol standpoint. Whatever patterns or practices Defendants may have had in place in other states is not an issue before this court, and Plaintiffs can, as this court has already ordered, obtain information regarding national data without relying on matters handled in other states. Therefore, the court denies Plaintiffs' request to produce number 10.

### IV.     Requests to Produce 12–23

In their requests to produce numbered 12–23, Plaintiffs asked Defendants to produce the data underlying the figures represented by Defendants in their Form 2007, which they submitted to the South Carolina Department of Insurance on November 28, 2001. In their response to Plaintiffs' motion, Defendants contend that they have provided Plaintiffs with some of this information and will continue to produce documents related to Plaintiffs' requests. As such, the court does not need to rule on this issue; however, it does find these documents relevant to

Plaintiffs' case. The Form 2007s were used by Defendants in calculating their loss cost multipliers, and Plaintiffs need the underlying data to vet Defendants' Form 2007s for alleged inaccuracies. Therefore, Defendants should make this information available to the Plaintiffs.

    IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

February 15, 2011  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge