# UNITED STATES DISTRICT COURT
## IN THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

|  |  |  |
|---|---|---|
| Temporary Services, Incorporated, a South | ) | |
| Carolina Corporation, and Charleston | ) | |
| Steel & Metal Company, on behalf of | ) | |
| themselves, and all others similarly situated, | ) | C/A No.: 3:08-cv-00271-JFA |
| | ) | |
| Plaintiffs, | ) | **ORDER APPROVING PETITION** |
| | ) | **FOR PRELIMINARY APPROVAL** |
| v. | ) | **OF CLASS ACTION SETTLEMENT** |
| | ) | **AND APPOINTMENT OF CLASS** |
| American International Group, Inc., et al, | ) | **COUNSEL** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on the petition of Plaintiffs Temporary Services, Inc. and

Charleston Steel & Metal Company for preliminary approval of a settlement of the class action

pursuant to Fed. R. Civ. P. 23(e). Plaintiffs also seek preliminary approval of attorneys' fees,

expenses, incentive awards, and class notice. For the reasons stated herein, these motions are

granted.

## ANALYSIS

### I.  <u>Provisional Certification of Class for Settlement Purposes</u>

Plaintiffs initially seek the certification of a class action for settlement purposes. It is

recognized that a potential settlement is a relevant consideration when considering class

certification. "If not a ground for certification *per se,* certainly settlement should be a factor, and

an important factor, to be considered when determining certification." <u>In re A.H. Robins Co.,

Inc.</u>, 880 F.2d 709, 740 (4th Cir. 1989) <u>abrogated by</u> <u>Amchem Products, Inc. v. Windsor</u>, 521

U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). The Supreme Court has affirmed that

"[s]ettlement is relevant to a class certification." <u>Amchem Products</u> at 619. Nevertheless, the

Supreme Court has reiterated that certification of a class for the purposes of settlement must satisfy the pertinent Rule 23 requirements. Id.

Even for settlement purposes, in order to certify a class, the Plaintiffs must demonstrate that the proposed certification satisfies the prerequisites set forth within Rule 23(a) and Rule 23(b). Rule 23(a) empowers the Court to certify a class action when (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class as a whole; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, Rule 23(b) requires that questions of law or fact common to members of the class predominate over those affecting individual members of the class and a class action is a superior means of resolving the controversy. Id. at 23(b).

### a. Rule 23(a) Requirements

#### i. Numerosity

Rule 23(a)(1) demands evidence that "the class is so numerous that joinder of all members is impracticable." Id. Although there is no specific rule on how many members a class must have, the Fourth Circuit has indicated that a class with over thirty members justifies a class. Williams v. Henderson, 129 Fed. Appx. 806, 811 (4th Cir. 2005) (citing 7A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 1762 (2d ed. 1986)). The class members that possessed the policies at issue between 2005 and 2007 number 3523 insureds, satisfying Rule 23(a)(1)'s numerosity requirement.

#### ii. Commonality

The second requirement under Rule 23(a) is that Class members assert common questions

of law or fact. Commonality is satisfied if only one legal or factual issue is shared by all class members. <u>Fisher v. Virginia Elec. & Power Co.</u>, 217 F.R.D. 201, 212 (E.D. Va. 2003); <u>Woodard ex rel. Woodard v. Online Info. Servs.</u>, 191 F.R.D. 502, 505 (E.D.N.C. 2000) (citing <u>Holsey v. Armour & Co.</u>, 743 F.2d 199, 216-217 (4th Cir. 1984); and <u>Brown v. Eckerd Drugs, Inc.</u>, 663 F.2d 1268, 1275 (4th Cir. 1981)).

Rule 23(a)(2)'s commonality requirement is met where the defendant engaged in a common course of conduct. <u>Fisher v. Virginia Elec. & Power Co.</u>, 217 F.R.D. 201, 223 (E.D. Va. 2003). This commonality requirement does not, however, mandate complete identity of a plaintiffs' claims with those of the class. <u>Id.</u> at 212; <u>CV Reit, Inc. v. Levy</u>, 144 F.R.D. 690, 696 (S.D. Fla. 1992).

> [Class members'] claims must depend upon a common contention…. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

<u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).

There is one common allegation that forms the basis of this suit: whether the loss cost multipliers ("LCMs") formulated by the Defendants and applied to class members' policies were improperly inflated. Similarly, determining whether these LCMs were unlawfully inflated is an issue of South Carolina law. The ultimate determination by the jury in this case would be whether the Defendants breached their contracts with the class members by charging premiums that were "excessive, inadequate, or unfairly discriminatory." S.C. Code Ann. § 38-73-10(a)(1). If the LCMs utilized by the Defendants were wrong, then Plaintiffs contend they were equally wrong for every putative class member and determination of that issue "will resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." <u>Id.</u> Thus this case presents a sufficient degree of commonality, and it is appropriate for class certification.

### iii.    Typicality

"Although the commonality and typicality requirements for class actions tend to merge, each factor serves a discrete purpose. Commonality examines the relationship of facts and legal issues common to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives." <u>Gonzalez v. Proctor & Gamble Co.</u>, 247 F.R.D. 616, 621 (S.D. Cal. 2007), <u>quoting Dukes v. Wal-Mart, Inc.</u>, 474 F.3d 1214, 1232 n. 10 (9th Cir. 2007). For typicality to be satisfied, the "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." <u>Deiter v. Microsoft Corp.</u>, 436 F.3d 461, 466 (4th Cir. 2006). In this case, "[b]ecause the claims of the representative parties are the same as the claims of the class, the typicality requirement is satisfied." <u>Thorn</u>, 445 F.3d at 339.

As referenced above, Plaintiffs allege that the the complained-of LCMs were applied uniformly to all Commerce & Industry and American Home insureds. If Plaintiffs were to prevail at trial, the benefits derived from the litigation  would be the percentage rebate provided to all members of the class. As such, the claims represented in the proposed class are typical of one another and the Class Representatives' interests in prosecuting their own cases simultaneously advance the interests of all class members.

### iv.    Adequacy

Rule 23(a)(4) requires that "the named [Plaintiff] will fairly and adequately protect the interests of the class." also <u>Simpson v. Specialty Retail Concepts, Inc.</u>,149 F.R.D. 94, 102 (M.D.N.C. 1993). This requirement is met if it appears that (1) the Lead Plaintiff has interests in common with, and not antagonistic to, the proposed class's interests; and (2) the Lead Plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation.  <u>Id.</u>; <u>In re</u>

Kirschner Med., 139 F.R.D. at 79. Accord: Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2nd Cir. 1968), vacated and remanded on other grounds, 417 U.S. 156 (1974). Plaintiffs satisfy both prongs of the "adequacy" test.

       1.   Plaintiffs' Interests Are Co-Extensive with and Not Antagonistic to the Interests of the Class

In order for a conflict of interest to be sufficiently serious to defeat class certification, defendant must make "an actual showing of a real probability of a potential conflict." Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 187 (N.D. Ill. 1992). In this case, there has been no showing of either an actual or potential conflict between the Lead Plaintiffs and the members of the class.

"The representatives must possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." McLaughlin on Class Actions, § 4:27, pp. 649-650. The parties have not presented any evidence suggesting that the principals of either Temporary Services or Charleston Steel are lacking in integrity or any other necessary characteristic of a fiduciary.

The class representatives must also demonstrate adequate standing. "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." Sosna v. Iowa, 419 U.S. 393, 403, 95 S. Ct. 553, 559 (1975)(string citation omitted). If Plaintiffs were to prevail at trial, then result would be that both Temporary Services and Charleston Steel have suffered damages as a result of the allegations contained within the amended complaint. Thus both Lead Plaintiffs have independent standing to assert these claims on behalf of their respective subclasses.

       2.   The Lead Plaintiffs Will Vigorously Represent the Class

The Lead Plaintiffs have provided vigorous representation of the class thorough experienced and qualified counsel. Counsel in this matter are experienced attorneys with significant experience in litigating complex civil actions. Moreover,

> The adequacy of plaintiffs' counsel, like that of the individual plaintiffs, is presumed in the absence of specific proof to the contrary. Furthermore, courts generally hold that the employment of competent counsel assures vigorous prosecution.

South Carolina Nat'l Bank v. Stone, 139 F.R.D. 325, 330-31 (D.S.C. 1991)(internal citations omitted). Furthermore, the Plaintiffs themselves have demonstrated vigorous representation of the class through four years of attentive litigation. Thus, Rule 23(a)(4) is satisfied here.

### b. Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), a plaintiff must satisfy Rule 23(b)(3), which requires the Court to find that:

> [T]he questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As discussed below, this case meets all of these criteria.

### i. Common Questions of Fact Predominate

"In determining whether the predominance standard is met, courts focus on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." In re Kirschner Med., 139 F.R.D. at 80; Ardrey v. Federated Kemper Ins. Co., 142 F.R.D. 105, 114 (E.D. Pa. 1992); Dura-Bilt Corp. v. Chase Manhattan, 89 F.R.D. 87, 93 (S.D.N.Y.1981). The issue of liability in this case is common to every class member: whether the Defendants charged excessive insurance premiums by using inflated loss cost multipliers.

Inasmuch as the predominance test focuses on the nature of the claims asserted, common questions predominate regardless of any difference in the amount of damages recoverable by individual class members. As numerous courts have noted, "[a]lthough the amount of damages suffered is generally an individual matter, this issue should not preclude a finding of predominance." In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig., 122 F.R.D. 251, 254 (C.D. Cal. 1988) (citing Blackie, 524 F.2d at 905). Accord: South Carolina Nat'l Bank v. Stone, 139 F.R.D. 325, 331 (D.S.C. 1991) ("[C]ourts uniformly hold that class actions may be appropriate even though there are differences in the amount of damages suffered by the individual class members").

In sum, the claims of the Plaintiffs and the putative class members arise from the allegation of Defendants' calculation of loss cost multipliers. The Complaint alleges no conduct or claims particular to the Plaintiff s that were not practiced upon every member of the class in the same manner. . Accordingly, the issues of fact arising from Defendants' conduct predominate over any individual issues, making class treatment appropriate here.

### ii. Common Questions of Law Predominate

Because the laws of the State of South Carolina apply to all insurance policies at issue here, common questions of law predominate. "In order to make the findings required to certify a class action under Rule 23(b)(3) (that common issues predominate, etc.), one must initially identify the substantive law issues which will control the outcome of the litigation." State of Ala. v. Blue Bird Body Co., Inc., 573 F.2d 309 (5th Cir.1978). In multi-state class actions, "variations in state law may swamp any common issues and defeat predominance.'" Castano v. American Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996). Here, however, Plaintiffs are only prosecuting claims on behalf of individuals possessing South Carolina insurance policies.

### iii. A Class Action Is Superior To Other Available Methods For The Fair And Efficient Adjudication Of This Action

In determining whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the court must consider the following: (a) the interest of members of the class in individually controlling separate actions, (b) the extent and nature of any related litigation already commenced by class members; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the potential difficulties of managing a class action. Meredith v. Mid-Atlantic Coca Cola Bottling Co., 129 F.R.D. 130, 134 (E.D. Va. 1989). In this case, each of these factors supports class certification.

First, the expense of individual actions, weighed against the potential individual recovery of the vast majority of class members here, would be prohibitive. Moreover, the burden on the courts of adjudicating hundreds of separate actions alleging Defendants' charging of excessive premiums would be significant. Certification of this litigation as a class action would be superior to any other available method for the fair and efficient adjudication of the controversy—particularly in light of the pending settlement. The Supreme Court has recognized that "[c]lass actions also may permit the [Plaintiffs] to pool claims which would be uneconomical to litigate individually ... [because] most of the plaintiffs would have no realistic day in court if a class action were not available." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985). See also Mills v. Roanoke Indus. Loan & Thrift, 70 F.R.D. 448, 455 (W.D. Va. 1975).

### II. Appointment of Class Counsel

In conjunction with the motion to certify a class action for the purposes of settlement, Plaintiffs seek the appointment of Richard A. Harpootlian, P.A., Chappell, Smith & Arden, and The Steinburg Law Firm as class counsel. Rule 23 provides specific considerations to be employed when appointing class counsel.

> Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
> (A) must consider:
>
> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class;

Fed. R. Civ. P. 23(g)(1). As explained further below, class counsel are well prepared to satisfy their duty to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Therefore the Court grants Plaintiffs' motion to appoint the law firms of Richard A. Harpootlian, P.A., Chappell, Smith, & Arden, P.A., and The Steinberg Law Firm as class counsel.

### a. Work done in identifying and investigating claims

Class counsel have conducted approximately four and a half years of work developing the litigation to this point. No other law firms have participated in the representation of the plaintiffs or of the putative class. As evidenced by the extensive briefing regarding potential refunds to be provided to the putative class, class counsel have attempted to preserve the rights of the class and guarantee no rights could be compromised.

### b. Experience with class actions and other complex litigation

As shown by the consideration of "adequacy of representation" under Rule 23(a)(4), class counsel have extensive experience with class actions, complex litigation, and the law of workers compensation.

### c. Knowledge of the applicable law

Class counsel possess a great deal of experience in the legal profession and practice extensively in federal court. The litigation and negotiations surrounding this case over the past four and a half years has left class counsel well versed in the substantive statutory and common law that gives rise to this case.

### d. Resources committed to representing the class

Richard A. Harpootlian, P.A., Chappell, Smith & Arden, and The Steinburg Law Firm are successful law firms. As shown by the experience of these firms in complex litigation, these attorneys also possess the resources to prosecute a large class action for an extended period of time. However, because the motion for class certification is for the purposes of settlement, the consideration of this criterion is less applicable than it otherwise would be.

### III. Preliminary Approval of the Class Settlement

Plaintiffs seek preliminary approval of the settlement terms set forth in Dkt. 356-2. Preliminary approval of a class action settlement should be granted when the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys and appears to fall within the range of possible approval. MANUAL FOR COMPLEX LITIG. § 30.41 (West 2008).

### a. Specific Terms of the Proposed Settlement

### 1. Benefits to Class Members

In exchange for a release of claims, Class Members are entitled to a pro rata distribution of the $4 million settlement fund, net of approved attorneys' fees, expenses, and incentive awards. As set forth in the "Plan of Allocation," each Class Members' distribution will be determined by "the ratio of that Class Member's South Carolina premium to the total amount of

South Carolina premium charged for all Class Members."

The Court finds the $4 million allocated to the settlement fund to be a reasonable amount of compensation for the claims brought in this case. This is a significant sum awarded to class members in the face of what was likely to prove a very expensive and complex case to present to a jury. There was a substantial risk that this case would conclude adversely to the interests of the Plaintiffs and the class, thus any compromise accepted by the Plaintiffs in agreeing to the sum of this settlement reflected the risks inherent in continuing litigation.

### 2. Class Representatives' Incentive Awards

Class Counsel request that Temporary Services, Inc. and Charleston Steel & Metal Company receive a class representative incentive award of $20,000 each reflecting their efforts on behalf of the Class. At the conclusion of a successful class action case, it is common for courts exercising their discretion, to award special compensation to the class representative in recognition of the time and effort they have invested for the benefit of the class. Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998). See also Bogosian v. Gulf Oil Corp., 621 F.Supp. 27, 32 (E.D. Pa. 1985) ("The propriety of allowing modest compensation to class representatives seems obvious"); Van Vranken v. Atl. Richfield Co., 901 F.Supp. 294, 299-300 (N.D. Cal. 1995) (awarding $50,000 to the named plaintiff); In re Dunn & Bradstreet Credit Serv. Customer Litig., 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding $55,000 each to two named plaintiffs).

In this case, the Plaintiffs have effectively fulfilled their obligations as Class Representatives. Plaintiffs have voluntarily engaged in hard-fought litigation on behalf of hundreds of other South Carolina companies when the benefits solely available to them hardly justify the effort. As such, the requested incentive awards are appropriate.

### 3.    Attorneys' Fees and Costs

Class Counsel seek an attorneys' fee award of one-third (1/3) of the common fund awarded to the class, or $1,333,333.00.   Class Counsel also seek a reimbursement from the common fund of nontaxable costs in the amount of $230,589.11.

The procedure for awarding attorneys' fees and costs in the class action context is controlled by Rule 23(h).

> In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:
>
> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

Fed. R. Civ. P. 23(h). Rule 54(d)(2)(B) further clarifies the necessary content of the motion for attorneys' fees.

> (A) *Claim to Be by Motion.* A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

(B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:

(i) be filed no later than 14 days after the entry of judgment;

(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

(iii) state the amount sought or provide a fair estimate of it; and

(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2).

### a. The reasonableness of the requested fee should be considered within the frame work of a common fund fee award

The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fees from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478, (1980). Historically, attorneys' fees awarded from a common fund have been calculated as a percentage of the fund. See Federal Judicial Center, Manual for Complex Litigation (Fourth) § 14.121 at 187 (2004) (footnotes omitted*). See also* Camden I Condominium Assoc. v. Dunkle, 946 F.2d 768, 771-74 (11th Cir. 1991) (discussing the history of common fund fee awards). In 1984, the Supreme Court expressly acknowledged in dicta that common fund fee awards should be calculated as a percentage of the fund, stating that "the calculation of attorney's fees under the 'common fund doctrine,' . . . is based on a percentage of the fund bestowed on the class . . . ." Blum v. Stenson, 465 U.S. 886, 900 at n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984).

The percentage method also is widely believed preferable in a case such as this one where the Plaintiffs agreed to pay counsel on a contingency fee basis. Class Counsel were not hired on an hourly basis, nor have any of their fees or expenses been paid as would have been

required in representation on an hourly basis. In addition, application of a percentage recovery is especially appropriate in this case because significant time and expenses will likely be incurred in the future and must be compensated. Accordingly, the Court will determine the reasonableness of the requested fee on the basis of a percentage of the $4 million common fund.

> **b.** **An Award of One-Third of the Common Fund for Services Performed and for Future Services and Expenses is Fair and Reasonable**

The determination of a reasonable fee is within the Court's discretion guided by the particular facts and circumstances of the litigation at issue in light of various relevant factors universally considered by courts in adjudicating common fund fee awards. The fee requested is reasonable in light of all the factors involved, including the complexity of the case, the novelty of the legal issues, the exceptional efforts made by Class Counsel, the exceptional results obtained by Class Counsel, the outstanding monetary recovery, and the risky nature of the litigation for which Class Counsel received no compensation for many years.

A total fee of one-third of the class settlement for all work performed and to be performed in this case is well within the range of what is customarily awarded in settlement class actions. An award of fees in this range for work performed in the creation of a settlement fund has been held to be reasonable by many federal courts. See, e.g., In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 306-307 (3d Cir. 2005) (review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71% with a median value that "turns out to be one-third"); In re Newbridge Networks Sec. Litig., No. Civ. A. 94-1678, 1998 WL 765724 (D.D.C. Oct. 23, 1988)(unpublished) (awarding 30% of settlement fund plus $150,864.82 in expenses); Cullen v. Whitman Medical Corp., 197 F.R.D. 136, 150 (E.D. Pa. 2000) ("the award of one-third of the [settlement] fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); In re Crazy Eddie Sec. Litig., 824 F.Supp. 320 (E.D. N.Y. 1993) (awarding

approximately 33.8% from $42 million settlement fund plus $2 million in expenses); In re Bioscience Sec. Litig., 155 F.R.D. 116, 117 (E.D. Pa. 1994) (awarding 30% fee award from 5.2 million settlement fund).

The market rate for a contingent fee is a highly relevant measure of damages in a contingency fee case such as this one that is tried to judgment and where representation of the Class will be ongoing post-judgment. A one-third fee award from the common fund in this case is consistent with, if not below, what is routinely privately negotiated in contingency fee litigation. In non-class contingency fee litigation, a 30% to 40% contingency fee is typical. "[A] one-third fee is a common benchmark in private contingency fee cases. That bench mark is then often adjusted upward to 40% or higher in the event of an appeal." See Allapattah Serv. Inc., 454 F.Supp.2d at 1212 (citations to studies and reports omitted). See also In re Orthopedic Bone Screws Products Liability Litig., No. 97-381, 2000 WL 1622741 (E.D.Pa. Oct. 23, 2000)(unpublished) ("plaintiffs' counsel in private contingency fee cases regularly negotiate agreements providing for thirty to forty percent of any recovery."); Durant v. Traditional Invest., Ltd., No. 88-9048, 1992 WL 203872 (S.D.N.Y. Aug. 12, 1992)(unpublished) ("contingent fee agreements up to forty percent have been held to be reasonable"); McKenzie Constr., Inc. v. Maynard, 823 F.2d 43, 45 (3d Cir. 1987) (holding 33% contingency fee reasonable).

Accordingly, the Court finds that the requested percentage award in this case of one-third of the common fund for past work, future work, and future expenses is reasonable in light of the evidence establishing that the market rate for private contingency fees is in the range of 33 1/3 percent to 40 percent, the precedent finding that attorneys' fees in the range of one-third of a settlement fund are reasonable, and the additional circumstances of this case addressed in further detail below.

### c. Class Counsel obtained an excellent result.

After four years of litigation, Class Counsel have obtained a four million dollar settlement on behalf of a large class of South Carolina insureds. Litigation was hard-fought at every turn. This is a good result in a difficult case which supports the petition for approval of attorneys' fees.

### d. The skill and efficiency of the attorneys involved is established

This case presented unique issues and complications. Class Counsel successfully defended several rounds of dispositive motions, including but not limited to certified questions to the South Carolina Supreme Court. The quality of opposing counsel is also relevant to the evaluation of class representation. See, e.g., Ressler v. Jacobsen, 149 F.R.D. 651, 654 (M.D. Fla. 1992). Here, the Defendants were vigorously represented by a team of experienced, capable, and relentless counsel from highly reputable law firms. These facts support approval of the requested attorneys' fee award.

### e. The complexity and duration of this litigation supports a fee award of one-third of the common fund

The litigation has been actively litigated for over four years. Class Counsel have expended considerable time and effort seeking to vindicate the contractual rights of the Plaintiffs and class members. There are over 350 docket entries in this case that include numerous intensely briefed matters such as the filed rate doctrine, attorney-client privilege, and detailed discovery disputes.

### f. There was a serious risk of nonpayment in this case

Class Counsel undertook this action on a contingent fee basis, funding the costs and devoting significant time to prosecute this action without any assurance of being compensated for their efforts. Class Counsel faced considerable risk of non-recovery particularly considering

Defendants' successful efforts to narrow this litigation at the 12(b)(6) phase, the dispositive potential of the questions certified to the South Carolina Supreme Court, and the difficulties inherent in converting a mass of paperwork pertaining to an esoteric issue into a comprehendible subject matter for a jury, and the talents of opposing counsel.

Courts across the country recognize that the risk of receiving no recovery is a major factor in awarding attorneys' fees, and it is the primary aspect of a contingency fee case that supports a percentage fee recovery. See In re Prudential-Baache Energy Income P'ships Sec. Litig., No. 888, 1994 WL 202394 (E.D. La. May 18, 1994)(unpublished).

> Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

Id., 1994 WL 202394 at *6.

The successful outcome in this case was far from certain. As such, the risk of nonpayment incurred by the attorneys supports the petition for approval of attorneys' fees.

**g.      The amount of time devoted to this case was considerable**

Against the procedural backdrop described above, Class Counsel, were required to devote considerable time to vindicate the contractual rights of the Plaintiffs and the class. The record of this case establishes that Class Counsel have expended substantial hours in prosecuting this case to judgment.

**h.      The requested cost reimbursement is appropriate**

"The requested costs must be relevant to the litigation and reasonable in amount." Yarrington v. Solvay Pharmaceuticals, Inc., 697 F. Supp. 2d 1057, 1067 (D. Minn. 2010). In conjunction with the Petition for Preliminary Approval, counsel submitted an itemized list of

incurred total costs of $230,589.11 directly related to this litigation. The Court has reviewed the incurred costs and finds them to be both relevant to the litigation and reasonable in amount.

**4.  Settlement Administration**

The parties have agreed that the Defendants shall bear the costs of the settlement administration. The Court approves this agreement between the parties.

### b.  Notice to the Settlement Class

Plaintiffs also seek approval of the proposed method of notice to the Settlement Class. Under Federal Rule of Civil Procedure 23(e), class members are entitled to notice of the proposed settlement and an opportunity to object or opt-out before it is finally approved by the court. Notice to the class should establish the time and place of a public hearing on the proposed settlement and specify the procedure for opting out, filing objections, and appearing at the settlement hearing. Manual for Complex Litigation, Fourth, § 21.312 (2004).

The Plaintiffs propose to provide notice to the Class consistent with that exhibited within Dkt. 356-3. This proposed notice fully complies with Rule 23(e) and with the requirements of due process. The Notice is written in plain English and includes: (1) a description of the Settlement class; (2) a description of the proposed Settlement; (3) the names of counsel for the class; (4) a fairness hearing date; (5) a statement of the deadlines for filing objections to the Settlement, for submitting a claim, and for filing requests of exclusion; (6) the consequences of such exclusion; (7) the consequences of remaining in the Settlement class; (8) a statement of the Defendant's responsibility for Settlement class counsel's fees and expenses; and (9) information on how to obtain further information.

Notices will be mailed to the last known mailing address of all Class Members, all of which information is in possession of Defendants. Addresses will be updated by Defendants

through use of the National Change of Address database from the U.S. Post Office. By these methods, direct and individual mailed notices will be made to all Class Members. The form and content of the Notice, together with the manner of dissemination set forth above is reasonably calculated to reach all Class Members. It is the "best notice practicable" under the circumstances and more than satisfies the requirements of due process and Rule 23.

### c. Proposed Settlement is Fair, Reasonable, and Adequate

With regard to proposed class action settlements, the Fourth Circuit Court of Appeals has established that "[t]he primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir. 1991). In conducting the fairness hearing, the court considers both fairness and adequacy. Id.

> In assessing the fairness and adequacy of a proposed settlement, "there is a strong initial presumption that the compromise is fair and reasonable." Courts have recognized that "[s]ettlements, by definition, are compromises which 'need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits.'"

S. Carolina Nat. Bank v. Stone, 139 F.R.D. 335, 339 (D.S.C. 1991) (internal citations omitted). "Ultimately, approval of a class action settlement is committed to 'the sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances.'" In re MicroStrategy, Inc. Sec. Litig., 148 F. Supp. 2d 654, 663 (E.D. Va. 2001), quoting Evans v. Jeff D., 475 U.S. 717, 742, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986).

The driving concern of the Court's fairness inquiry is whether the proposed settlement "was reached as a result of good-faith bargaining at arm's length, without collusion…." In re

Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991). To that end, the Fourth Circuit has recognized the following relevant considerations.

> (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of … class action litigation.

In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991). The Court's analysis of these considerations supports approval of the settlement.

### 1. Posture of the Case and Extent of Discovery

District courts within the Fourth Circuit have found that even when cases settle early in the litigation after only informal discovery has been conducted, the settlement may nonetheless be deemed fair. See, e.g., Grice v. PNC Mortg. Corp. of America, No. CIV. A. PJM-97-3084, 1998 WL 350581 (D. Md. May 21, 1998) (preliminarily approving a settlement that was reached "very early" in the litigation, only months after the filing of the class action complaint, since it contained favorable results for both parties and reflected mutual concessions); Strang v. JHM Mortg. Sec. Ltd. P'ship, 890 F. Supp. 499, 501-02 (E.D. Va. 1995) (holding a class action settlement was fair where parties reached settlement agreement six months after complaint was filed and plaintiffs conducted "sufficient informal discovery and investigation to fairly evaluate the merits of [the d]efendants' positions during settlement negotiations").

In contrast to these holdings, however, this case settled on the eve of trial after full discovery and briefing of dispositive motions. Thus this consideration defeats any notion of collusion between the parties.

### 2. Circumstances of the Negotiations

The fact that negotiations were "adversarial" and were conducted at "arm's length" helps dispel any concern that counsel colluded in reaching agreement. In re Microstrategy, Inc. Sec. Litig., 148 F. Supp. 2d 654, 665 (E.D. Va. 2001).

Moreover, supervision by a mediator lends an air of fairness to agreements that are ultimately reached. S.C. Nat'l Bank, 139 F.R.D. at 346 ("Although a magistrate judge's supervision is not mandatory in order to determine a settlement is fair, such participation can insure that the parties will negotiate in good faith without collusion."); Vaughns v. Bd. of Educ., 18 F. Supp. 2d 569, 579 (D. Md. 1998) ("Settlement negotiations were protracted and much of the time were, as earlier noted by the Court, supervised by a Court-appointed mediator[.] . . . Discussions were detailed and adversarial."). Here, highly adversarial litigation took place before being resolved by a formal, in-person mediation session held before Judge Martin, a former U.S. district judge for the Southern District of New York.

### 3. Experience of Counsel

Both the Plaintiffs and the Defendants are represented by competent and experienced counsel, which weighs in favor of settlement approval. See Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08cv1310, 2009 U.S. Dist. LEXIS 89129, at *34 (E.D. Va. Sept. 28, 2009) (finding settlement was fair where counsel were "competent and well-experienced in handling federal court litigation in general and in particular in handling class action and multiple party claims"). As noted above, Class Counsel has ample experience in class actions and settlement of the same. Defendants are represented by Nelson Mullins Riley & Scarborough, LLP and Quinn Emanuel Urquhart & Sullivan, LLP, both of which are highly skilled and experienced law firms.

### d. The Settlement Is Adequate

In assessing the adequacy of a proposed settlement, the Fourth Circuit considers the following five factors: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs would likely encounter if the case were to go to trial; (3) the anticipated duration and expense of additional litigation;

(4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. <u>Jiffy Lube</u>, 927 F.2d at 159.

### 1. Relative Strength of Plaintiffs' Case

The Plaintiffs undoubtedly believe that their case is sound. However, Defendants have filed thoroughly briefed dispositive motions that have not been ruled upon and present a substantial threat of adversarial rulings to the Plaintiffs. Also, questions of admissibility of key pieces of evidence—including expert testimony—hand in the balance. Thus the Plaintiffs, while confident of their claims, face significant risks associated with continued litigation. Thus this consideration supports the adequacy of the settlement amount.

### 2. Existence of Any Difficulties of Proof

As indicated above, while Plaintiffs are confident in the strength of their case, the pending motions for summary judgment and to exclude expert testimony present troublesome issues that underscore the desirability of this settlement.

### 3. Anticipated Duration and Expense of Additional Litigation

In a case of this magnitude, a fully contested class action lawsuit would be expected to take several years to resolve at the District Court level. Any appeal would likely add at least another year. In the meantime, the expenses for such a complex case could easily range into the hundreds of thousands of dollars.

### 4. Solvency of Defendants

There is no evidence that Defendants are in danger of becoming insolvent.

### 5. Degree of Opposition to Settlement

Due to the preliminary nature of this motion, the Court is unaware of any opposition to this settlement.

## CONCLUSION

For the reasons stated herein, the Court issues an order as to the following:

1)  Certifying this case as a class action for settlement purposes;

2)  Naming Richard A. Harpootlian, P.A., Chappell, Smith & Arden, and The Steinburg Law Firm as Class Counsel;

3)  Granting Preliminary Approval to the proposed class action settlement;

4)  Granting Preliminary Approval to the requested attorneys' fees, costs, and incentive awards;

5)  Approving notice of the preliminary approval of this settlement to class members.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

June 22, 2012                               Joseph F. Anderson, Jr.
Columbia, South Carolina          United States District Judge